## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT JAWORSKI, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 11 C 1458** |
| | ) | |
| **ERWIN COHN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss.  For the reasons stated below, the motion to dismiss is granted.

## BACKGROUND

Plaintiffs contend that in 2001 they retained Defendant Erwin Cohn and Defendant Charles Cohn (collectively referred to as "Cohns") as counsel to represent Plaintiffs for claims relating to the alleged mishandling of Plaintiffs' investment funds.  Plaintiffs contend that the Cohns initiated arbitration proceedings (Underlying Proceedings) on behalf of Plaintiffs and that the Cohns committed legal malpractice in several ways.  Plaintiffs contend, for example, that the Cohens settled claims with

1

Daniel M. Brush (Brush) for $10,000 without informing Plaintiffs of the settlement

and without informing Plaintiffs of the risks associated with relieving Brush of

personal exposure to liability to Plaintiffs.  Plaintiffs also contend that, in the

Underlying Proceedings, an award was entered in favor of Plaintiffs against Ellen M.

Aleshire (Aleshire) for a total of $400,000 and the Cohens failed to file an adversary

action in Aleshire's bankruptcy proceedings to protect the debt.  Plaintiffs also

contend that the Cohens allowed a claim to be dismissed against ABN Amro (Amro)

before ascertaining whether Amro's security deposit could be used to satisfy an

award in favor of Plaintiffs.  In addition, Plaintiffs contend that the Cohns improperly

advised them to relieve Kevin Kowalski (Kowalski) of personal liability in order to

get testimony from Kowalski to support their other claims.  Plaintiffs also contend

that the Cohns allowed the claims against Dennis Wenmouth (Wenmouth), Robert E.

McBride (McBride), and Dennis Pasqual (Pasqual) to be dismissed and that such

individuals possessed funds and/or assets to satisfy an award.  The Cohns now move

to dismiss the instant action, arguing that the court lacks subject matter jurisdiction.


## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) (Rule 12(b)(1)) requires a court to

dismiss an action when it lacks subject matter jurisdiction.  *United Phosphorus, Ltd.*

*v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003).  If the concern of the court or party challenging subject matter jurisdiction is that "subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1) would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *Id.*; *see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff").  However, if the complaint appears on its face to indicate that the court has subject matter jurisdiction, "but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd.*, 322 F.3d at 946 (emphasis in original).  For the purpose of determining subject matter jurisdiction, this court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)).  The burden of proof in a Rule 12(b)(1) motion is "on the party asserting jurisdiction." *United Phosphorus, Ltd.,* 322 F.3d at 946.

## DISCUSSION

The Cohns argue that this court lacks subject matter jurisdiction in the instant action.  Plaintiffs allege in the amended complaint that this court has diversity subject matter jurisdiction.  (A Compl. Par. 1-2).  Pursuant to 28 U.S.C. § 1332(a), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. . . ."  *Id.*  In the instant action, there is no dispute that Plaintiffs are citizens of Arizona and South Carolina and Defendants are citizens of Illinois.  The Cohns argue that the amount in controversy requirement is not met in this case.

When the amount in controversy is not contested, the "plaintiff's good faith allegation of the amount in controversy" will be accepted "unless it appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009)(internal quotations omitted).  If the amount in controversy is challenged, "the plaintiff must support its assertion with competent proof."  *Id.* (internal quotations omitted)(stating that "[t]he plaintiff must prove the "jurisdictional facts by a preponderance of the evidence" and the plaintiff "must do more than "point to the

theoretical availability of certain categories of damages").

In the instant action, the Plaintiffs assert in the amended complaint only that they believe that they suffered damages in excess of $500,000. (A Compl. Par. 11). However, the proper sum for the amount in controversy requirement in a malpractice case, is the sum that Plaintiffs would have actually been able to recover from the defendants in the underlying action, absent the malpractice. *Klump v. Duffus*, 71 F.3d 1368, 1373 (7th Cir. 1995). The Cohns argue that the financial conditions of the respondents in the Underlying Proceedings shows that Plaintiffs would not have been able to collect the amount in controversy from the respondents in those proceedings.

In *Klump v. Duffus*, 71 F.3d 1368 (7th Cir. 1995), the Seventh Circuit indicated that in a legal malpractice action, in determining the amount that a plaintiff would have recovered, absent the malpractice, the ability to collect any award that would have been obtained should be taken into consideration. *Id.* at 1373. The Seventh Circuit indicated that relevant considerations includes matters such as the defendants' "employment status, financial position, asset ownership, insurance coverage, and all other evidence relevant to determining the amount of money that" the plaintiff "would have actually collected from" the defendants in the underlying suit. *Id.* at 1373-75. Plaintiffs have submitted an affidavit by Rebecca Wing (Wing), who is an attorney. Wing indicates that, in her professional judgment, the

respondents in the arbitration would have been jointly and severally liable. (Wing Aff. Par. 10-11).

I. AMRO

Plaintiffs also contend that the Cohns committed malpractice by allowing claims to be dismissed against Amro before ascertaining whether Amro's security deposit could be used to satisfy an award in favor of Plaintiffs. The Cohns acknowledge that the deposit amount was $50,000. Plaintiffs contend that, according to Wing, AMRO "would have paid up to [the] $50,000 deposit which they were holding to settle the arbitration matter against them if [the] Cohen[s] had leaned on them to apply the $50,000 deposit to settle [P]laintiff[s'] claim." (Ans. 5). However, Plaintiffs fail to show that such a conclusion is anything other than speculation on the part of Wing. Wing's own deposition testimony indicates that AMRO had itself filed a motion to dismiss based on a New York Stock Exchange rule protecting it from liability. (Wing Dep. 51-52). Plaintiffs' contention that AMRO was willing to pay $50,000 when it was not required to remain in the case is unfounded. Thus, Plaintiffs have not offered any evidence to show that any significant amount could have been recovered from AMRO.

## II.  Aleshire

Plaintiffs also contend that the Cohns failed to file an adversary action in Aleshire's bankruptcy and protect the debt owed by her to Plaintiffs.  It is undisputed that in the Underlying Proceedings an award was entered in favor of Plaintiffs against Aleshire in an amount of $200,000 in compensatory damages, $150,000 in punitive damages, and $50,000 in attorneys' fees.  Although Plaintiffs contend that the Cohns should have taken steps to ensure that the debt owed by Aleshire would not be dischargable in bankruptcy, Plaintiffs have not presented any evidence that they would have recovered any significant funds if Cohns had done so.  The record reflects that Aleshire filed for bankruptcy, lived at the time on food stamps and disability payments, and had extremely limited funds and assets.  Plaintiffs have not presented any evidence that would indicate that Aleshire's financial situation has materially changed or that she has any significant future prospects of income.  The Cohns have also pointed to evidence indicating that another creditor of Aleshire attempted to collect on a judgment and only was able to collect several thousand dollars.  Thus, Plaintiffs have not offered any evidence to show that any significant amount could have been recovered from Aleshire.

### III.  Brush

Wing indicates that there is evidence that shows that Brush had assets and/or funds available to satisfy an award if the Cohns had not allowed him to be relieved of personal liability.  Wing indicates, for example, that although Brush claimed he was impoverished, at the time when an award would have been entered against Brush he owned a home worth "close to a million [dollars], in either Evanston or Wilmette" that could have been used to satisfy an award. "  (Wing. dep. 55).  However, Plaintiffs have failed in their instant motion to provide any sort of evidence to support such a proposition other than Wing's deposition testimony in which she cannot remember with any certainty the approximate value of the house or even what town the house was located in.  Nor have Plaintiffs provided any information concerning the location of the house, its value, or whether any senior liens existed on the mortgage on the house.  Wing indicated that she learned about the house only when "in passing [Brush] would talk about his home" (Wing dep. 55).

Plaintiffs also speculate that Brush's widow may recover an award for a wrongful death claim that could be used for a recovery of any award against Brush. Such speculation as to prevailing in a separate pending action is not sufficient to show that the amount in controversy is satisfied.  Nor have Plaintiffs even shown that Plaintiffs would have been able to recover any funds obtained by Brush's widow in

her action.  *See, e.g., Wright v. Royce*, 193 N.E.2d340, 351 (Ill. App. Ct. 1963).

Plaintiffs also indicate that there is evidence that Brush received a $100,000 payment

at the time in question, but the record indicates that, if Brush received any such sum

it would have been prior to the time that any award would have been entered against

Brush.  Plaintiffs failed to present any evidence to show that Brush retained any of

the funds, or that any funds would have been available to Plaintiffs at the time of the

entry of an award.  Thus, Plaintiffs have not offered any evidence to show that any

significant amount could have been recovered from Brush.

## IV.  Kowalski

Plaintiffs contend that the Cohns should not have released Kowalski from

personal liability.  Plaintiffs have pointed to evidence indicating that Kowalski

indicated he was employed when he filed for bankruptcy.  However, Plaintiffs have

not presented any evidence to support their contention as to Kowalski's earnings at

the time of the arbitration award or as to his future earnings.  Plaintiffs have not

made even minimal efforts to provide information to allow the court to ascertain the

factors such as earnings, which the Seventh Circuit has indicated are relevant factors.

*See, e.g., Klump*, 71 F.3d at 1375.  The Cohns correctly point out that Plaintiffs have

not offered even any general facts or evidence to Kowalski's subsequent employment

status, much less the amount of his salary after his bankruptcy filing. Thus, Plaintiffs have not offered any evidence to show that any significant amount could have been recovered from Kowalski.

V. Wenmouth, McBride, and Pasqual

Plaintiffs also argue that, if the Cohns had not allowed the claims against Wenmouth, McBride, and Pasqual to be dismissed, their income could have been used to satisfy an award. However, Plaintiffs fail to provide even the slightest evidence to indicate what income, if any such individuals, would have received during the time in question. Plaintiffs indicate that Wenmouth is currently employed, but fail to indicate if he was employed at the time in question or even an approximate salary. (Ans. 9). Plaintiffs thus have failed to provide the court with adequate information to ascertain the amounts that Wenmouth, McBride, and Pasqual could have provided to satisfy any award. Thus, Plaintiffs have not offered any evidence to show that any significant amount could have been recovered from Wenmouth, McBride, and Pasqual, or from any other respondent in the Underlying Proceedings.

VI. Totality of Amounts that Could have Been Recovered

Even when considering the evidence provided by Plaintiffs in its totality,

10

Plaintiffs have failed to establish that the amount that could have been recovered absent the alleged malpractice would have exceeded $75,000. While Plaintiffs are not required to provide extensive financial documentation for the finances of all the defendants in the Underlying Proceedings, Plaintiffs are obligated to provide more than speculation by Wing as to what she believes could have been collected if the Cohns had acted prudently. Although Plaintiffs do not have to present conclusive evidence at this juncture concerning their potential recovery, Plaintiffs have failed to meet even their minimal burden at this juncture to show that this court has subject matter jurisdiction. Therefore, based on the above, the motion to dismiss is granted.

## CONCLUSION

Based on the foregoing analysis, the motion to dismiss is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 18, 2011